UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIE LINDER, JR.,

                                    Plaintiff,

                                                                    6:23-cv-01061-GTS-TWD

v.

ONEIDA COUNTY DISTRICT ATTORNEY'S OFFICE ET AL.,

                                    Defendants.
_____

APPEARANCES:

WILLIE LINDER, JR.
Plaintiff, *pro se*
14325
Oneida County Correctional Facility
6075 Judd Road
Oriskany, NY 13424

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**<u>ORDER AND REPORT-RECOMMENDATION</u>**

**I.      INTRODUCTION**

       The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff

Willie Linder, Jr. ("Plaintiff") alleging the Oneida County District Attorney's Office, Assistant

District Attorney ("ADA") Scott D. McNamara, ADA Grant Garramone, and ADA Todd

Carville violated his civil rights.  (Dkt. No. 1.)

       Plaintiff, who at the time of filing, was in the custody of New York State Department of

Corrections and Community Supervision ("DOCCS") at the Oneida County Correctional

Facility,[1] has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP application").[2] (Dkt. Nos. 2, 4.)

## II.   IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff's IFP application demonstrates economic need. (Dkt. Nos. 2, 4.) He also re-filed the inmate authorization form required in this District. (Dkt. No. 5.) Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), and has filed the inmate

---

[1] The Clerk sent the text order reopening Plaintiff's case (Dkt. No. 6) to Plaintiff's provided address at the Oneida County Correctional Facility via US mail. On September 19, 2023, the text order was returned to the Clerk's Office as undeliverable. (Dkt. No. 7.) According to the DOCCS Incarcerated Lookup, Plaintiff was transferred to the Elmira Correctional Facility in Elmira, NY on September 8, 2023. *See* https://nysdoccslookup.doccs.ny.gov/. The Court directs the Clerk to send this decision to Plaintiff (DIN # 23B3980) with a change of address form at Elmira Correctional Facility 1879 Davis St, Elmira, NY 14901 as a one-time courtesy. Plaintiff must complete and file the change of address form in order to continue receiving mail relating to this case.

[2] Plaintiff filed his complaint and motion to proceed IFP on August 25, 2023. (Dkt. Nos. 1, 2.) However, Plaintiff did not file the required inmate authorization form with his IFP application. By Order entered August 28, 2023, this case was administratively closed with an opportunity to comply with the filing fee requirement. (Dkt. No. 3.) Thereafter, Plaintiff filed his inmate authorization form required in this District, and the Clerk reopened the matter and restored it to the Court's active docket. (Dkt. Nos. 5, 6.)

authorization form required in this District, he is granted permission to proceed IFP.  (Dkt. Nos. 2, 4.)

## III.    BACKGROUND

On August 25, 2023, Plaintiff filed a Section 1983 complaint form with an attachment detailing his claims.  (*See* Dkt. No. 1.)  Plaintiff claims ADAs McNamara, Garramone, and Carville violated his Fourth Amendment rights "by malicious prosecution by alleging [his] unlawful pretrial detention and prosecution."  *Id.* at 9.  Plaintiff further alleges the three prosecutors "have caused [him] continued confinement for a[n] assault crime [he] did not commit, and continued threats of charging [him] with other potential crimes to force [him] to plead to the assault charge."  *Id.*  According to Plaintiff, "[n]o probable cause supported [his] original arrest, continued confinement, or prosecution."  *Id.*  Moreover, the prosecutors "acted with malice and racism" and Plaintiff "sustained and suffered damages as a result of his malicious prosecution" including "a deprivation of liberty apart from the initial seizure."  *Id.*  Plaintiff argues "[t]his entire criminal proceeding would [have] been resolved in [his] favor if [his] motions and due process wasn't terminated" and "[a] predicate constitutional violation [occurred] as a result of the proceedings."  *Id.*

Plaintiff then concludes he has "met all five elements" for his malicious prosecution claim and list them as follows:

> 1) All three defendants Scott D. McNamara, Grant Garramone, and Todd Carville cause me continued confinement and prosecution.
> 2) The original action was terminated in favor of my criminal defense.
> 3) No probable cause supported my original arrest, continued confinement, or prosecution.
> 4) All three defendants acted with malice.
> 5) I sustained damage because of the defendants unlawful action.

*Id.* at 10.

Plaintiff lists malicious prosecution as his one and only claim and requests punitive damages in the amount of $1,000,000 and "for all criminal charges to be dismissed." *Id.* at 11.

## IV.    DISCUSSION

### A.    Legal Standard

The Court shall dismiss a complaint in a civil action if the Court determines it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 1915A(b)(1)-(2); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### B.     Oneida County District Attorney's Office

To the extent that Plaintiff seeks money damages against the Oneida County District Attorney's Office, those claims are barred by the Eleventh Amendment.  *See Best v. Brown*, No. 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, No. 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

### C.      ADAs McNamara, Garramone, and Carville

To the extent Plaintiff seeks to sue ADAs McNamara, Garramone, and Carville, these

individuals are protected by prosecutorial immunity.  Prosecutors are immune from civil suit for

damages in their individual capacities for acts committed within the scope of their official duties

where the challenged activities are not investigative in nature but, rather, are "intimately

associated with the judicial phase of the criminal process."  *Simon v. City of New York*, 727 F.3d

167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal

quotation marks omitted); *see Imbler*, 424 U.S. at 431 ("[I]n initiating a prosecution and in

presenting the State's case, the prosecutor is immune from a civil suit for damages under §

1983.").  In addition, prosecutors are immune from suit for acts that may be administrative

obligations but are "directly connected with the conduct of a trial."  *Van de Kamp v. Goldstein*,

555 U.S. 335, 344 (2009).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in

preparing for the initiation of judicial proceedings or for trial, and which occur in the course of

his role as an advocate for the State."  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  This

includes "the decision to bring charges against a defendant, presenting evidence to a grand jury,

and the evaluation of evidence prior to trial."  *Moye v. City of New York*, No. 11 Civ. 316, 2012

WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted).

Immunity even extends to the falsification of evidence and the coercion of witnesses, the

knowing use of perjured testimony, the deliberate withholding of exculpatory information, the

making of false or defamatory statements in judicial proceedings, and conspiring to present false

evidence at a criminal trial.  *See Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *Imbler*,

424 U.S. at 431 n.34; *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

Moreover, "'[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.'" *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)); *see also Rich*, 2022 WL 992885, at *5 n.4 ("[A]ny claims Plaintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry*, 2021 WL 3037709, at *6 (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities—which were effectively claims against the State of New York—as barred by the Eleventh Amendment).

Plaintiff's threadbare allegations in the complaint do not clarify the context of his malicious prosecution claim.  For instance, while it seems Plaintiff was arrested for assault, there are no details surrounding his arrest, the actual charge, or any probable cause relating to the charge.  (Dkt. No. 1 at 9-10.)  Moreover, Plaintiff claims "[t]his entire criminal proceeding would [have] been resolved in my favor if my motions and due process wasn't terminated" yet claims on the next page that "[t]he original action was terminated in favor of my criminal defense."  *Id.* at 9, 10.  Nevertheless, Plaintiff appears to complain ADAs McNamara, Garramone, and Carville violated his Fourth Amendment right against malicious prosecution while performing their official duties as prosecutors.[3]  *Simon*, 727 F.3d at 171.  Because Plaintiff's allegations against ADAs McNamara, Garramone, and Carville relate to non-

---

[3]  Because the Defendants are protected by prosecutorial immunity, the Court does not find it necessary to discuss the merits of Plaintiff's malicious prosecution claim.

investigative actions they have taken in their official capacities as prosecutors, they are entitled to prosecutorial immunity.  *Simon*, 727 F.3d at 171; *see, e.g.*, *Matthews v. Cty. of Cayuga*, No. 5:17-CV-1004 (MAD/TWD), 2018 WL 2926272, at *3 (N.D.N.Y. June 8, 2018) (dismissing claims against prosecutor on initial review because of prosecutorial immunity).  Thus, Plaintiff's Section 1983 claim against ADAs McNamara, Garramone, and Carville fails as a matter of law.

Therefore, the Court recommends that Plaintiff's Section 1983 claims against ADAs McNamara, Garramone, and Carville be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A.

**WHEREFORE**, for these reasons, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 4) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b)(1); and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

---

[4] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72, 6(a).

  **IT IS SO ORDERED.**

Dated: October 16, 2023
     Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

[1]
At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]
Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson* [3] *v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3    It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]
> Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci[a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]
> Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:
>
>> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.
>
> *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

## IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Best v. Brown, Not Reported in Fed. Supp. (2019)

2019 WL 3067118

2019 WL 3067118
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Hilary A. BEST and All Persons
Similarly Situated, Plaintiffs,
v.
Richard A. BROWN, His Estate and
Successors in Office; The Queens County
District Attorneys Office, Defendants.

19-CV-3724 (WFK) (LB)
|
Signed 07/11/2019
|
Filed 07/12/2019

**Attorneys and Law Firms**

Hilary A. Best, Forest Hills, NY, pro se.

## MEMORANDUM & ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

**\*1** On June 26, 2019, the *pro se* plaintiff, Hilary A. Best, purportedly on behalf of himself and "all others similarly situated," filed this action pursuant to 42 U.S.C. § 1983 against the Office of the Queens County District Attorney, and the recently-deceased Queens County District Attorney, Richard A. Brown. He alleges the deprivation of his constitutional rights and seeks damages. Plaintiff paid the filing fee to commence this action. For the reasons set forth below, the complaint is dismissed, but plaintiff is granted leave to amend within thirty days of the date of this Order.

## STANDARD OF REVIEW

A court must construe a *pro se* litigant's pleadings liberally, *Erickson v. Pardus,* 551 U.S. 89, 94, (2007); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and a *pro se* complaint should not be dismissed without granting the plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation marks and citations omitted). Nevertheless, "a *pro se* plaintiff must still comply with the

relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Wilber v. U.S. Postal Serv.,* No. 10-CV-3346 (ARR), 2010 WL 3036754, at *1 (E.D.N.Y. Aug. 2, 2010) (internal quotation marks and citations omitted).

Even if a plaintiff has paid the filing fee, a district court may dismiss the case, *sua sponte,* if it determines that the action is frivolous. *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 363-64 (2d Cir. 2000); *see Mallard v. United States District Court,* 490 U.S. 296, 307–08 (1989) (noting that "[28 U.S.C. §] 1915(d), for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision"). "A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir. 1999) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325, 327 (1989)). Indeed, "district courts are especially likely to be exposed to frivolous actions and, thus, have [a] need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources." *Fitzgerald,* 221 F.3d at 364. A cause of action is properly deemed frivolous as a matter of law when, *inter alia,* it is "based on an indisputably meritless legal theory"—that is, when it "lacks an arguable basis in law ..., or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir. 1998).

## BACKGROUND

The complaint alleges:

Defendants have practiced a policy of depriving Plaintiffs of liberty without due process of law in violation of the 14th Amendment to the United States Constitution, by subjecting Plaintiffs to indictment upon felony complaint without a preliminary hearing or waiver thereof, in violation of CPL secs. 100.05, 180.10 through 180.80, and 190.55 (2)(a), and minimum due process of law requiring a hearing when a person faces a mass deprivation of liberty, as without bail pursuant to CPL 530.20.

**\*2** Under color of state law, the defendants have pursued and obtained indictments against Plaintiffs within five (5) business days of arrest in order to prevent release pursuant to CPL sec. 180.80,[1] when although indictment within five (5) business days of arrest upon a felony

Case 6:23-cv-01061-GTS-TWD    Document 8    Filed 10/16/23    Page 16 of 53

Best v. Brown, Not Reported in Fed. Supp. (2019)

2019 WL 3067118

complaint prevents a defendant's release upon his or her own recognizance pursuant to CPL sec. 180.80, nothing in the statute permits the omission of a preliminary hearing or waiver thereof.

Compl. at 3-4.

1    CPL § 180.80 provides in pertinent part that a defendant held in custody for "more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon" must be released by the local criminal court. "The purpose of CPL § 180.80 is 'to ensure that a defendant being held in custody on the basis of a felony complaint not be incarcerated for an excessive period of time prior to judicial determination that there is reasonable cause to believe that he committed a felony.' " *People v. Ijnace,* 174 Misc. 2d 850, 854–55, 667 N.Y.S.2d 229, 233 (Sup. Ct. 1997) (quoting *People ex rel. Suddith and Willard Cradle v. Sheriff of Ulster County,* 93 A.D.2d 954, 463 N.Y.S.2d 276 (3rd Dept. 1983)).

Plaintiff does not make any personal claims. He provides no information about whether, when or with what crime he was charged and/or convicted, or of what type of preliminary hearing he was deprived. He seeks to bring this claim on behalf of persons who were indicted by the Office of the Queens County District Attorney because, he alleges, the office has been violating the cited provisions since 1991.

## DISCUSSION

### A. Claims on Behalf of Others

Plaintiff is a non-attorney proceeding *pro se* purporting to represent other similarly situated persons. Plaintiff may not bring this complaint on behalf of others without a lawyer. 28 U.S.C. § 1654; *see Berrios v. New York City Hous. Auth.,* 564 F.3d 130, 132 (2d Cir. 2009) ("[A]n individual generally has the right to proceed *pro se* with respect to his own claims or claims against him personally, [but] the statute does not permit unlicensed laymen to represent anyone else other than themselves."); *Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir. 1998) (holding that an unlicensed individual "may not appear on another person's behalf in the other's cause"). Thus, the complaint as to other plaintiffs is dismissed without

prejudice. His class action certification request, to the degree he expresses one, is denied as moot.

### B. Defendants are Immune from this Action

Plaintiff's claim for damages against the Office of the District Attorney, Queens County and Richard Brown, District Attorney Queens County ("Brown") in his official capacity are barred by the Eleventh Amendment to the United States Constitution. "Stated as simply as possible, the Eleventh Amendment means that, as a 'general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* "Further, where a state official is sued for damages in his or her official capacity, such a suit is deemed to be a suit against the state and is barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted). Where a district attorney is sued for damages in his or her official capacity, immunity under the Eleventh Amendment may attach to bar the suit, as the suit is construed as being against the State of New York. *See Amaker v. N.Y. State Dep't of Corr. Servs.,* 435 F. App'x 52, 54 (2d Cir. 2011)(holding that a district attorney and an assistant district attorney "benefited from New York's Eleventh Amendment immunity against suit" because they were sued in their official capacities) (citing *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)(holding that district attorney represents the state, not the county, and so is entitled to Eleventh Amendment immunity). Plaintiff's claim against Brown in his official capacity and the Office of the Queens County District Attorney are therefore barred by the Eleventh Amendment and is dismissed as frivolous. *See Ying Jing Gan v. City of New York,* 996 F.2d at 536 (stating that a district attorney in New York state is entitled to Eleventh Amendment immunity where plaintiff's "claims center[ ] ... on decisions whether or not, and on what charges to prosecute: and not where those claims focus on the administration of the district attorneys' office.); *Fitzgerald,* 221 F.3d at 364 (frivolous claims may be dismissed sua sponte even in fee-

Best v. Brown, Not Reported in Fed. Supp. (2019)
2019 WL 3067118

Case 6:23-cv-01061-GTS-TWD    Document 8    Filed 10/16/23    Page 17 of 53

paid actions); *Montero,* 171 F.3d at 760 (a complaint is frivolous if the defendant is immune from suit).

**\*3** To the extent plaintiff seeks to sue Brown for damages in his individual capacity,[2] he has failed to allege any facts in support of his conclusion that Brown personally violated his constitutional rights. If Best seeks damages for Brown's decision to prosecute him, Brown would be entitled to absolute prosecutorial immunity. It is well-settled that prosecutors performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity from an action for damages under § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976). A prosecutor thus has absolute immunity in connection with the decision whether to commence a prosecution. *See, e.g., Imbler v. Pachtman,* 424 U.S. at 431 (absolute immunity for "initiating a prosecution"); *Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir. 1987) (filing a criminal information); *Ying Jing Gan v. City of New York,* 996 F.2d at 530 ("a prosecutor has absolute immunity for his decision as to what offenses are and are not to be charged."). If plaintiff seeks to assert a claim that Brown maintains or perpetuates an office-wide policy that deprived him of his constitutional rights, he has not plead any facts specific to *his* prosecution nor how the practice directly caused the alleged deprivation of *his* rights. In any event, even if plaintiff had alleged facts to support his contention that Brown maintained an unconstitutional policy as the "final policy authority" of the Queens County District Attorney's Office that violated plaintiff's constitutional rights, such a claim would amount to a claim against Brown as the official policymaker of the City, that is, is a municipal liability claim against the City of New York, rather than a claim against Brown in his individual capacity. Thus, as currently stated, plaintiff's complaint against Brown in his individual capacity is dismissed as frivolous. *Montero,* 171 F.3d at 760 (a complaint is frivolous if the defendant is immune from suit); *Livingston v. Adirondack Beverage Co.,* 141 F.3d at 437.

[2]   Plaintiff selects that he is bringing this complaint against Brown in his "individual capacity" on the form complaint. *See* Compl. at 2.

### LEAVE TO AMEND

In light of plaintiff's *pro se* status, *Cruz v. Gomez,* 202 F.3d 593 (2d Cir. 2000) (*pro se* plaintiff should afforded opportunity to amend complaint prior to dismissal), plaintiff

is afforded thirty days to amend his complaint. *See* Fed R. Civ. P. 15(a); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d at 795. In the amended complaint, plaintiff should name as proper defendants those individuals who have some personal involvement in the actions he alleges in the amended complaint and provide the dates and locations for each relevant event. To the best of his ability, plaintiff must describe each individual and the role she or he played in the alleged deprivation of his rights. If plaintiff cannot identify the defendant(s) by name, he may set forth the allegations against that person and designate them as Jane Doe or John Doe, providing any identifying information available to him. And he must state facts to support the allegation of a constitutional violation. Essentially, the body of plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why plaintiff is entitled to relief.

### CONCLUSION

Accordingly, the complaint is dismissed as frivolous because the defendants are absolutely immune from suit. *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d at 363-64; *Montero v. Travis,* 171 F.3d at 760.

In light of plaintiff's *pro se* status, however, plaintiff is granted thirty days to amend his complaint. Should plaintiff decide to file an amended complaint, it must be submitted within thirty days of this Order, be captioned "Amended Complaint," and bear the same docket number as this Order. Plaintiff is advised that the amended complaint will completely replace the original complaint, so plaintiff must include in it any allegations he wishes to pursue against proper defendants. To aid plaintiff with this task, the Clerk of Court is respectfully requested to provide a "Complaint for Violation of Civil Rights (Non-Prisoner Complaint)" form to plaintiff.

Further, if plaintiff fails to comply with this Order within the time allowed, the action shall be dismissed, and judgment shall enter.

Although plaintiff paid the filing fee to commence this action, if plaintiff requests *in forma pauperis* status for any appeal of this order, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

Case 6:23-cv-01061-GTS-TWD    Document 8    Filed 10/16/23    Page 18 of 53

**Best v. Brown, Not Reported in Fed. Supp. (2019)**

2019 WL 3067118

**\*4  SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3067118

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.
State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

**ORDER**

ANALISA TORRES, District Judge:

 **\*1** This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, the New York
State Constitution, and New York common law. *See generally*
Compl., ECF No. 1. Before the Court are three motions to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, brought by
the State, ECF No. 20, the DA Defendants, ECF No. 22, and
the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

**BACKGROUND** [1]

[1]      Unless otherwise stated, the following facts are
taken from the complaint and assumed, for
purposes of this motion, to be true. *ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.
2007).

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness said that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based

on this call, Plaintiff believes "it was more likely that it was [ ] Jackson who fired the shots before jumping into the black sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2** The shooting was investigated by Detective Michael Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.*, ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained— but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a

warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3. [2]

[2]    The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.*, 424 F.3d 231, 233 (2d Cir. 2005).

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3** On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to

what he testified about." *Id.*; *see also id.* at 136. The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)
An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power —to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

#### B. Rule 12(b)(6)
To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

### II. Duplicative and Improper Claims
**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint— fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–

63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal. [3]

[3]      Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

## IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities"[4] arising *inter alia* under § 1983, § 1985, and § 1986,[5] based on three main factual assertions. *See generally Compl.* First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

[4] Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

[5] Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent infliction of emotional distress) against the DA Defendants.

### A. Absolute Immunity

**\*6** The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

#### 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at \*4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him. [6]

6      Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

*7 Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity —from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable

cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill*, 45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity.

*Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation.[7]

[7]    As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

**B. Time Bar**

**\*8**  The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill*, 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations, *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4,

2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g.*, *Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at \*2 n.3 (S.D.N.Y. Sept. 2, 2021).[8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period —but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

[8]    The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 2021 WL 1406683, at \*3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at \*4 (S.D.N.Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes the termination of a proceeding. *Sharp*, 2019 WL 2250412, at \*4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021.[9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

9

Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely. [10] Accordingly, Count 6 is DISMISSED with prejudice.

10

Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

**\*10**  Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure

to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

**V. City's Motion to Dismiss**

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded —surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

[11]     As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

**A. Time Bar**

**1. Section 1983 Claims**

**\*11**  Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly

two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2. Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrado's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

[12]     As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

### B. Claim Against the City [13]

[13]     Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

**\*12**  The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more,

state a claim for municipal liability. *E.g., Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The Court agrees. Plaintiff asserts—citing no authority in support —that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing

the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

### E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation

omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

**\*14** By **May 16, 2022,** Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se.* The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 992885

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 06/14/2021

**Attorneys and Law Firms**

Rondue Gentry, Plaintiff, Pro Se, Lakeview Shock
Incarceration Correctional Facility, P.O. Box T, Brocton, New
York 14716.

**ORDER and REPORT-RECOMMENDATION**

Miroslav Lovric, U.S. Magistrate Judge

**I. INTRODUCTION**

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 5) filed by Rondue Gentry ("Plaintiff") to
the Court for review. For the reasons discussed below, I grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5) and recommend that the Complaint be accepted for filing in
part, dismissed in part without leave to amend, and dismissed
in part with leave to amend.

**II. BACKGROUND**

On March 22, 2021, Plaintiff commenced this action by
filing a verified Complaint and a motion to proceed *in
forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, 2021, the
Court denied Plaintiff's *in forma pauperis* application as
incomplete and administratively closed the case. (Dkt. No. 4.)
On April 9, 2021, Plaintiff filed an amended *in forma pauperis*
application. (Dkt. No. 5.) As a result, the case was reopened
and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally
alleges that Plaintiff's civil rights were violated by the State of
New York, New York State Police Officers Kyle Filli, David
Hurley, and Heath McCrindle, and Assistant District Attorney

Steven Sharp and Albany County District Attorney David
Soares (collectively "Defendants"). (*See generally* Dkt. No.
1.)

[1]     The court must interpret *pro se* complaints to
        raise the strongest arguments they suggest. *Soto v.
        Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
        *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
        1994)).

More specifically, Plaintiff alleges that on September 2, 2016,
he was arrested on felony charges but released on bail on
September 9, 2016. (*Id.* at 3.) While out on bail, Plaintiff
alleges that on April 9, 2017, Defendant Filli stopped him
while he was driving near a toll plaza. (*Id.* at 3 & Attach.
2 at 2 [Pl.'s Exs.].) [2] Plaintiff alleges that, during the stop,
"Defendant [ ] Filli [ ] falsely accused Plaintiff of having a
lit marijuana blunt in his ashtray" and that when instructed
to exit his vehicle, Plaintiff put items down the side of his
seat and eventually drove away from the officer. (Dkt. No.
1 at 3.) After he allegedly fled the scene, Plaintiff alleges
that Defendant Filli falsely accused Plaintiff of making four
"u-turns" on the interstate and, at one point, traveling at 127
miles per hour, and made "several [other] vehicle and traffic
law violations." (*Id.*) Defendant Filli eventually lost sight of
Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

[2]     "A copy of a written instrument that is an exhibit
        to a pleading is a part of the pleading for all
        purposes. Fed. R. Civ. P. 10(c); *Cortec Indus.,
        Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.
        1991) ("the complaint is deemed to include any
        written instrument attached to it as an exhibit or
        any statements or documents incorporated in it by
        reference.").

On or about April 11, 2017, Plaintiff alleges that he was
contacted by his attorney, [3] who informed Plaintiff that he
had received a call from Defendant Sharp, the Albany County
District Attorney, regarding the incident with Defendant Filli
on April 9, 2017. Plaintiff alleges that his attorney informed
him that if he did not turn himself in, a warrant would be
issued for his arrest. (Dkt. No. 1 at 4.) On the advice of
his attorney, Plaintiff alleges that he appeared at the Albany
City Courthouse on April 18, 2017, "to address the matter
in good faith and resolve any and all confusion[.]" (*Id.*)
Plaintiff alleges that when he arrived at the courthouse with
his attorney, he was arrested by Defendant Hurley for charges

"lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id.*)

[3]     Plaintiff's references to "his attorney" in the Complaint appear to relate to his representation in certain criminal matters. Plaintiff has indicated to the Court that he is proceeding *pro se* in this matter. (Dkt. No. 1 at 1.)

**\*2** Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id.*) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned on charges from both the Town of Guilderland and the City of Albany. (*Id.*)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id.* at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id.*)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id.*) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id.*) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id.* at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of New York failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated

evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including $20,000,000 from the State of New York; $5,000,000 from Defendant Filli; $5,000,000 from Defendant Hurley; $1,000,000 from Defendant McCrindle; $3,000,000 from Defendant Sharp; and $10,000,000 from Defendant Soares. (*Id.* at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

### III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). [4]

[4]     Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three

strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[5]

[5]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues

to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy— all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However, Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli,

Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*. [6]

[6]    The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

**B. Claims Against the State of New York**

**\*5** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment. [7]

[7]    Plaintiff also alleges that he "filed a claim in the New York State Court of Claims [against the State of New York] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 WL 5107119, at *7

(N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the New York Court of Claims public docket, Plaintiff's case against the State of New York, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of New York in accordance with the service requirements set forth in the New York Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of New York*, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

### C. Claims Against Defendants Sharp and Soares

### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id.* at 238; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity "when she acts as an 'advocate.' " *Id.* (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id.* (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id.* at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolute immunity attaches even if the prosecutor engaged in those actions with vindictive or malicious intent." *Id.*

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity— when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id.* (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares*, 19-CV-113, 2019 WL 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by*, 2019 WL 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

### 2. Official Capacity

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro*, 713 F. App'x

1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of New York. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

---

[8]  The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of New York liable for his "cruel and unusual punishment." (*Id.*) However, as explained in Section V.A. above, the State of New York is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

**\*7**  For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their

individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

#### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't,* 16-CV-6554, 2017 WL 11548970, at \*3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York,* 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome,* 17-CV-0578, 2018 WL 3121611, at \*3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato,* 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.,* when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.,* 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace,* 549 U.S. at 388-89); *see also Thomas v. Heid,* 17-CV-1213, 2017 WL 9673716, at \*3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted,* 2018 WL 1773130 (N.D.N.Y.

Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at *3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges, [9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired. [10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

[9] Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of New York*, 13-CV-929, 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

[10] Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials—presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

### ii. *Miranda* Claim Against Defendant McCrindle

**\*8** As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in §

1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id*. (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id*. at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dept.*, 96-CV-0756E, 1999 WL 1067560, at *2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case

against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 WL 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 WL 3887872 (E.D.N.Y. Sept. 5, 2017).

 **\*9** It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

[11]    Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id.* at 3.) Only after he was arrested and arraigned on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id.* at 5.)

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of New York, which is immune from suit.

### VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

[12]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant

leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*10** I recommend that Plaintiff's claims against Defendant State of New York be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at \*10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against New York State Police), *report and recommendation adopted by*, 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at \*2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 WL 5904789, at \*3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.[13] *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

[13]   As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case

against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11 ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[14]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2021 WL 3037709

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

*1 Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation.[1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

[1]  When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear-error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a clear-error
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453291, at *1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false
arrest claims against Defendants Filli and Hurley in their
individual capacities; (3) Plaintiff's claim for a *Miranda*
violation against Defendant McCrindle in his individual
capacity; and it is further

*2 **ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

to the U.S. Marshal for service upon Defendants Filli, Hurley and McCrindle, and those Defendants are directed to respond in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Slip Copy, 2021 WL 3032691

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2569085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ronald MOYE, Plaintiff,
v.
The CITY OF NEW YORK; Sgt. Nelson Caban,
P.O. Paul Jeselon, P.O. Samuel Fontanez, P.O.
Edward Simonetti, P.O. Matthew Boorman, P.O.
Frank Papa, P.O. Tawaina O'Neal, P.O. Brennan;
P.O. John; and A.D.A. Dustin Chao, Defendants.

No. 11 Civ. 316(PGG).
|
July 3, 2012.

### *MEMORANDUM OPINION & ORDER*

PAUL G. GARDEPHE, District Judge.

**\*1** Plaintiff Ronald Moye has brought claims against the
City of New York, former New York County Assistant
District Attorney Dustin Chao, and eight members of the New
York City Police Department ("NYPD") under 42 U.S.C.
§ 1983 and state law. Moye claims that Chao is liable for
damages under Section 1983 and state law for malicious
prosecution, abuse of process, denial of a fair trial, fabrication
of evidence, conspiracy "to inflict an unconstitutional injury,"
and intentional and negligent infliction of emotional distress.
(Am. Cmplt., Second, Third, Fourth, Fifth, Sixth, Seventh,
and Ninth Claims) Chao has moved to dismiss the Amended
Complaint on grounds of absolute immunity. For the reasons
stated below, Chao's motion to dismiss will be granted.

### *BACKGROUND*

For purposes of deciding Defendant Chao's motion to dismiss,
the Court has assumed that the following facts presented in
the Amended Complaint are true.

### I. *MOYE'S ARREST*

On or about March 12, 2002, at approximately 8:00
p.m., NYPD officers Paul Jeselson and Tawaina O'Neal
were stationed on the rooftop of an apartment building

on the south side of West 118th Street near the corner
of Morningside Avenue conducting nighttime narcotics
surveillance. (Am.Cmplt.¶¶ 19, 22) Plaintiff's car was located
on the north side of West 118th Street, near Manhattan
Avenue. (*Id.* ¶ 21) Officer Jeselson claimed that he observed
Plaintiff "extend his hand from the driver's side window and
hand a small glassine" to another individual—later arrested
—who, in turn, handed it to an unapprehended customer. (*Id.*
¶ 20) The Defendant officers moved in and arrested Moye in
the vicinity of 352 West 118th Street. (Am.Cmplt.¶¶ 12, 25)

At the time of the arrest, and later at the 28th Precinct, the
officers searched Moye and his car and found United States
currency, both in Moye's possession and inside the vehicle.
(*Id.* ¶ 27) The Defendant officers unnecessarily grabbed
Moye, pushed him, and placed excessively tight handcuffs on
him (*id.* ¶ 30), causing him to suffer bruises to and numbness
in his wrists. (*Id.* ¶ 32)

Moye was indicted on March 22, 2002, for Criminal
Possession of a Controlled Substance in the Third Degree.
(Am. Cmplt. ¶ 35; Schwartz Decl., Ex. A) Plaintiff alleges that
the police officer defendants "conspired [to give] and gave
false testimony and intentionally placed false evidence before
the grand jury." [1] (Am.Cmplt.¶ 35)

[1]     The Amended Complaint does not disclose what
        false testimony or other false evidence was laid
        before the grand jury. Moreover, there is no
        suggestion that Chao was involved in presenting
        false testimony or false evidence to the grand jury.

### II. *MOYE'S FIRST TRIAL*

Moye's first trial began on January 14, 2003. (Schwartz Decl.,
Ex. B) A.D.A. Chao introduced photographs at trial which
he claimed showed the position of Plaintiff s car as it was
parked on West 118th Street. (Am.Cmplt.¶ 38) Chao, Officer
Jeselson, and Officer Papa were present when a District
Attorney's office photographer took these photos in June 2002
from the March 12, 2002 observation point. (*Id.* ¶¶ 41–42,
44) Although the photographs were intended to convey the
vantage point of the officers on the night of the arrest, they did
not replicate the "nighttime conditions." (*Id.* ¶ 45) According
to Moye, these photographs nonetheless showed that the
officers could not have seen Plaintiff extend his hand from
the driver's side window and pass a small glassine to another
individual, because the driver's side could not be seen from
the vantage point of the rooftop observation post, even with
binoculars. (*Id.* ¶¶ 46, 48) At trial, Officer Jeselson admitted

that "he was not able to see the driver's side of the vehicles in the photographs." (*Id.* ¶ 47) Jeselson nonetheless claimed that he had been able to see Moye's hand "during the nighttime observation." (*Id.* ¶ 39) The first trial ended in a mistrial, with the jury unable to reach a verdict. (*Id.* ¶ 49)

### III. *MOYE'S SECOND TRIAL*

**\*2** In February 2003, A.D.A. Chao, Officers Brennan and Jeselson, and D.A's Office photographer Nancy Badger returned to West 118th Street to take more photographs. (*Id.* ¶ 53) They repositioned the car on an angle in order to make it appear that the officers would have been able to see Moye's hand outside the driver's side window on the night of his arrest. (*Id.* ¶¶ 55–60) With the car positioned in this fashion, Jeselson and Chao instructed Badger to take photographs of Officer Brennan's hand outside the driver's side window in an effort to simulate what the officers would have seen that night. (*Id.* ¶¶ 60–61) Jeselson and Chao then had Brennan move the car back to a curbside position "where additional photographs [were] taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶ 63)

At Moye's second trial, Chao introduced these new photographs and elicited testimony from Jeselson in which he used the photographs to support his claim that he was able to see Moye's hand from the rooftop observation post. (*Id.* ¶¶ 66, 74) However, Badger testified that, in taking the new photographs, "the defendants moved the vehicle to an angle where the hand could be visible." Defendants then returned the vehicle to its curbside position and took additional photographs that "falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶¶ 81–84)

In summation, Moye's lawyer argued that Jeselson had lied about his observations from the roof and the positioning of the car in the photographs introduced by the prosecution.

(*Id.* ¶ 85) In response, A.D.A. Chao argued that Officer Jeselson had no opportunity to frame the defendant, because Chao had been present at the observation post:

"[Defense counsel] spoke about people on that roof. It's in evidence. Officer Jeselson was on that roof, the photographer Laura Badger was on the roof, and I was on that roof. Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

"And if he knew he was going to get away with it when I say that's the opportunity, you know [defense counsel] talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office. Well, if Officer Jeselson thought he was going to get away with it—

"[DEFENSE counsel]: Mr. Chao is vouching for his witness.

"THE COURT: Overruled.

"[ADA] CHAO: If Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me because I'm prosecuting this case, not Officer Jeselson.

"[DEFENSE counsel]: That's objectionable vouching for his witness.

"THE COURT: Overruled.

"[DEFENSE counsel]: Your Honor, he is making himself an unsworn witness for the credibility of his police officer.

**\*3** "THE COURT: Overruled.

"[ADA] CHAO: Ladies and gentlemen, Mr. Morgenthau should fire me if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on that roof is me. Well, that lies with me.

"So what's the explanation? If there's no motive, no opportunity for why Ms. Badger remembers it differently. Well, there's evidence that you heard the officer was on the roof. Evidence that you heard I was on the roof also. I have no other answer other than the fact that she is mistaken....

"[DEFENSE counsel]: He is vouching for his witness using the pronoun I.

"THE COURT: Members of the jury, you can accept his argument as to what happened on the roof. It's his argument based upon the evidence as he recalls it."

*People v. Move,* 52 A.D.3d 1, 5 (1st Dep't 2008); *see also* (Am. Cmplt. ¶¶ 87–92.

Moye was convicted at his second trial and sentenced to four-and-a-half to nine years' imprisonment. (Am.Cmplt.¶¶ 13–14)

**IV. *THE CHARGES AGAINST MOYE ARE DISMISSED***

On appeal, the First Department vacated the conviction in a 3–2 decision. *People v. Move,* 52 A.D.3d 1. The First Department found that "the prosecutor improperly vouched for his witness and interjected his personal integrity and the veracity of the District Attorney's office into his summation to support the credibility of Police Office Jeselson." *Id.* at 6. The New York Court of Appeals agreed that Chao had engaged in impermissible vouching for his witness, affirmed the reversal of the conviction, and remanded the case to Supreme Court. *People v. Move,* 12 N.Y.3d 743, 744 (2009). After remand, the New York County District Attorney's Office dismissed the case on October 21, 2009. (Am.Cmplt.¶¶ 16, 37)

*DISCUSSION*

**I. *IMMUNITY***

Chao argues that the claims against him must be dismissed because his actions are protected by absolute immunity. [2]

[2]    Because Moye sues Defendant Chao in his individual capacity (Am .Cmplt.¶ 9), his claims are not barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("To the extent that ... a [Section 1983] claim is asserted against a [state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.").

Section 1983 "purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher,* 522 U .S. 118, 123 (1997). In order to state a claim under Section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Newton v. City of New York,* 566 F.Supp.2d 256, 269–70 (S.D.N.Y.2008) (citing *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004)).

"Although section 1983 imposes liability upon every person who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d

75, 77 (2d Cir.1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.' " *Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).

**\*4**  As the Second Circuit has explained:

Such immunities are of two types: absolute and qualified. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 430–31. *See also Hill v. City of New York,* 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).

By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. *Buckley v. Fitzsimmons,* 509 U.S. at 273. ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); *accord Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000).

*Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502–03 (2d Cir.2004).

Absolute immunity extends only so far as necessary to protect the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995). Nonetheless,

[t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111

Moye v. City of New York, Not Reported in F.Supp.2d (2012)

2012 WL 2569085

S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 995).

*Pinaud,* 52 F.3d at 1147. The Court addresses the parameters of absolute prosecutorial immunity below.

**A. *Legal Standard for Absolute Prosecutorial Immunity***
A prosecutor who, as here, is sued in his or her individual capacity, may assert absolute or qualified immunity as a defense. Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette v. City of New York,* No. 05 CV 5275(SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Hill,* 45 F.3d at 663) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint")). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.[3] *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *United States v. Colbert,* No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept. 11, 1991). This approach is appropriate given that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler,* 424 U.S. at 419 n. 13. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley,* 509 U.S. at 270 (1993) (citing *Burns,* 500 U.S. at 486).

[3]   District courts likewise evaluate the applicability of absolute immunity before assessing whether a plaintiff has sufficiently alleged a constitutional violation. *Pinaud,* 52 F.3d at 1148 n. 4 (citing *Buckley,* 509 U.S. at 261).

**\*5** Prosecutorial immunity to Section 1983 claims is grounded in the immunity to tort liability that prosecutors enjoy under the common law. *Flagler v. Trainor,* 663 F.3d 543, 546 (2d Cir.2011) That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler,* 424 U.S. at 423). Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina,* 522 U.S. at 125. Prosecutors are therefore "absolutely immune from suit only when acting as advocates and when

their conduct involves the exercise of discretion." *Flagler,* 663 F.3d at 546 (citing *Kalina,* 522 U.S. at 127).

The Supreme Court addressed the question of absolute immunity for prosecutors in *Imbler,* where it held that prosecutors are entitled to absolute immunity for damage suits under Section 1983 for all acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and ... presenting the State's case [at trial]." *Imbler,* 424 U.S. at 430.

Later, in *Buckley,* 509 U.S. at 273, the Supreme Court considered whether the prosecutor defendants were entitled to absolute immunity for "investigative" work they performed well before seeking an indictment, involving an effort to connect the plaintiff to a bootprint left at a murder scene. Although the Court rejected the prosecutors' claim for absolute immunity, the Court cautioned that it had

> not retreated ... from the principle that acts undertaken by a prosecutor preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley,* 509 U.S. at 273 (internal citations and quotations omitted).

Whether a prosecutor has absolute immunity for a particular act thus "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Johnson v. City of New York,* No. 00 CIV 3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (citing *Kalina,* 522 U.S. at 126). Furthermore, this "application of immunity is not limited to the duties a

prosecutor performs in the courtroom." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (citing *Buckley,* 509 U.S. at 272).

**\*6** "[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." *Hill,* 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory,* 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....")

Because absolute immunity extends broadly to all acts committed by a prosecutor in his or her role as an advocate, it protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

> absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (*per curiam* ) (holding ... that prosecutor was immune from § 1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing] ... there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the

performance of their duties. *See Imbler,* 424 U.S. at 426–428.

*Dory,* 25 F.3d at 83.[4]

[4]
> By contrast, discretionary prosecutorial actions that are not "intimately associated with the judicial phase of the criminal process" are entitled only to qualified immunity. *See Buckley,* 509 U.S. at 270–75; *Burns,* 500 U.S. at 491–95. A prosecutor is "absolutely immune from liability under section 1983 [only] for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.' " *Day,* 909 F.2d at 77 (quoting *Imbler,* 424 U.S. at 410). Thus, when a prosecutor acts in an investigative or administrative capacity, absolute immunity is not available. *Hill,* 45 F.3d at 661. For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78; authorizes or directs the use of wiretaps, *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984); or performs the functions normally performed by the police, such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273. The Supreme Court has also withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, *Burns,* 500 U.S. at 492–96, or acting as a complaining witness. *Kalina,* 522 U.S. 118, 129–31; *see also Ying Jing Gan,* 996 F.2d at 533 (finding that prosecutor was not entitled to absolute immunity where he allegedly exposed a witness to retaliation and failed to provide adequate protection for the witness).

Although courts have declined to establish a bright-line test based on the stage of a criminal proceeding, "absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue." *Tabor v. New York City,* No. 11 CV 0195 FB, 2012 WL 603561, at \*4 (E.D.N.Y.2012) (citing *Barbera v. Smith,* 836 F.2d at 99. In contrast, where formal proceedings have not begun and the prosecutor is acting in an investigative capacity—such as by providing the police with legal advice on investigative techniques—qualified immunity generally applies. *Id.* While the Supreme Court has noted that a prosecutor is not absolutely immune for every action taken after probable cause has been established, *see Buckley,* 509 U.S. at 274 n. 5, "the Court's treatment of the issue demonstrates that

the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Cousin v. Small,* 325 F.3d 627, 633 (5th Cir.2003); *accord Barbera,* 836 F.2d at 99 (noting "that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts"); *see also DiBlasio v. Novello,* 344 F.3d 292, 300–01 (2d Cir.2003) ( "In assessing whether absolute immunity should attach to a prosecutor ... we have focused on the timing of the conduct at issue....") Thus, in interpreting *Buckley,* the Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand, with only the former entitling a prosecutor to absolute immunity. *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998).

**\*7** In assessing a prosecutor's claim of absolute immunity, the court employs a "functional approach," *see, e.g., Burns,* 500 U.S. at 486, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988); *see also Van de Kamp v. Goldstein,* 555 U.S. 335, 335–336 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of ... 'functional' considerations"). The court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir.2004) (a court must examine the "nature of the function performed" in assessing whether absolute immunity will attach.); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

### B. *Analysis*

#### 1. *Malicious Prosecution, Abuse of Process*

To the extent that the Amended Complaint seeks to hold Chao liable for initiating the prosecution of Moye, absolute immunity is clearly applicable. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) ("[T]he prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."); *see also Hill,* 45 F.3d at 660–61 (holding that prosecutors and those working under their direction are absolutely immune for claims relating to the initiation of a prosecution and for conduct before a grand jury). Plaintiff s

federal and state law claims alleging malicious prosecution and abuse of process will therefore be dismissed. [5]

[5]    Absolute immunity is a defense not only to Section 1983 claims but to related state law claims. *See Shmueli,* 424 F.3d at 238 (dismissing Section 1983 and related state law malicious prosecution claims); *Arum v. Miller,* 331 F.Supp.2d 99, 112 (E.D.N.Y.2004) (dismissing abuse of process and civil conspiracy claims on grounds of absolute prosecutorial immunity); *Imbler,* 424 U.S. at 424 (same principles require conferral of absolute immunity for damage claims against prosecutors under Section 1983 and state law).

#### 2. *Creation of Misleading Photographs, Conspiracy to Present False Evidence at Trial*

Moye alleges that Chao, in preparation for Moye's second trial, returned to West 118th Street and instructed Nancy Badger—the District Attorney's office photographer—to take photographs that inaccurately represented the position of Moye's car on the night of his arrest. Chao then presented these photographs at the second trial. (Am.Cmplt.¶¶ 38, 40, 50, 50–54, 66–67) Moye alleges that these photographs gave the false impression that the police in the observation post would have been able to see Moye's hand outside the driver's side window. (*Id.* ¶ 60) Moye further argues that absolute immunity does not extend to Chao's role in obtaining these allegedly misleading photographs, because obtaining such evidence is "not a traditional prosecutorial function" and was "done for the purpose of misleading the second jury." (Pltf. Opp. Br. at 10–11)

Prosecutors' absolute immunity applies "not just for presentation of testimony," however, but also to preparatory conduct "relating to their advocacy." *Dory,* 24 F.3d at 83. The Supreme Court and the Second Circuit have emphasized that ' "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera,* 836 F.2d at 100 (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett,* 798 F.2d at 571 ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....").

**\*8** Chao obtained the photographs at issue after Moye's first trial and in preparation for Moye's second trial. Accordingly, his involvement in obtaining these photographs took place long after formal criminal proceedings had been commenced. *See Deskovic v. City of Peekskill,* Nos. 07–CV–8150 (KMK), 07–CV–9488 (KMK), 2009 WL 2475001, at \*10 (S.D.N.Y. Aug. 13, 2009) ("[i]n assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant") (citing *DiBlasio,* 344 F.3d at 300–01).

Furthermore, in directing that these new photographs be taken, Chao was performing in his role as a prosecutor preparing for trial: he sought to obtain these visual depictions of the crime scene in order to strengthen his case. (Am. Cmplt. ¶ 64 (purpose of second set of photographs was "to show that P.O. Jeselson could see a hand coming out of the car window on the date of plaintiff s arrest")). Although Chao was working with the police, he was acting within his role "as [an] advocate for the State." *Burns,* 500 U.S at 491. Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial. *See, e.g., Deskovic,* 2009 WL 2475001, at \*5, \*11, \*13 (plaintiff contended that A.D.A. had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial; granting A.D.A.'s motion to dismiss Section 1983 claims on absolute immunity grounds, because the A.D.A.'s alleged misconduct took place after indictment during the "judicial phase of the criminal process"); *Bertuglia v. City of New York,* No. 11 Civ. 2141(JGK), 2012 WL 906958, at \*21 (S.D.N.Y. Mar. 19, 2012) (granting motion to dismiss state law claims against A.D.A. defendant based on post-indictment evidence-gathering activities; absolute immunity applicable because "the Complaint does not allege facts that create a plausible inference that [the prosecutor] was not acting as an advocate seeking to strengthen her case against an indicted defendant"); *Zahrey v. City of New York,* No. 98–4546, 2009 WL 54495, at \*30–\*31 (S.D.N.Y. Jan. 7, 2009) (granting absolute immunity to A.D.A. alleged to have engaged in post-indictment effort to fabricate evidence); *KRL v. Moore,* 384 F.3d 1105 (9th Cir.2004) (granting A.D.A. absolute immunity for alleged misconduct related to his role in obtaining a post-indictment search warrant seeking evidence to corroborate pending charges); *Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) (granting absolute immunity to A.D.A. accused of fabricating evidence post-indictment; "at the time of [A.D.A.] Jordan's ...

conversations with Rowell, in which Jordan allegedly told Rowell to implicate Cousin falsely in the murder and coached him on how to testify, Jordan was acting as an advocate rather than as an investigator. The interview was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause. Jordan therefore is entitled to absolute immunity with respect to this claim."); *see also Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) (affirming dismissal on absolute immunity grounds of Section 1983 claim brought against Assistant State's Attorney based on alleged conspiracy to present false evidence at trial); *Dory,* 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for ... allegedly conspiring to present false evidence at a criminal trial").

**\*9** Because Chao is alleged to have obtained the misleading photographs post-indictment, in preparation for Moye's second trial, and in an effort to strengthen his case as the State's advocate, he is entitled to absolute immunity for this alleged misconduct.

### 3. *Misconduct at Trial*

Moye alleges that Chao elicited false testimony from Officer Jeselson at trial, that he buttressed Jeselson's false testimony through introduction of the misleading photographs, and that he then vouched for the truth of Jeselson's testimony in his summation.

A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity. *Jones v. King,* No. 10 Civ. 0897(PKC), 2011 WL 4484360, at \*4 (S.D.N.Y. Sept. 28, 2011) ("The claim that [the prosecutor] 'conspir[ed] to present false evidence at a criminal trial' is barred.... The prosecutor enjoys absolute immunity 'despite allegations of his "knowing use of perjured testimony....' " ") (citations omitted); *Bertuglia,* 2012 WL 906958, at \*23 (prosecutors are entitled to absolute immunity for allegations that they "coerced and harassed various witnesses into giving false testimony"); *Urrego v. United States,* No. 00 CV 1203(CBA), 2005 WL 1263291, at \*2 (E.D.N.Y.2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."); *Johnson v. Scott,* No. CV–91–1467(CPS), 1993 WL 36131, at \*2 (E.D.N.Y. Feb. 5, 1993) (A.D.A. entitled to absolute immunity related to witness perjury, because this "concern[ed] ... the presentation of the State's case against the plaintiff"); *see Imbler,* 424 U.S. at

430–31 (granting prosecutors absolute immunity for their conduct "in presenting the State's case," including permitting a fingerprint expert to give false testimony, suppressing important evidence, and introducing a misleading artist's sketch into evidence.).

The analysis does not change because Plaintiff alleges a conspiracy to commit these acts. *Shmueli,* 424 F.3d at 237–38 ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy") (citing *Dory,* 25 F.3d at 83); *Bernard.* 356 F.3d at 503; *Hill,* 45 F.3d at 659 n. 2 (when the underlying activity at issue is covered by absolute immunity, the "plaintiff derives no benefit from alleging a conspiracy").

Plaintiff also argues that Chao acted outside his prosecutorial role when he vouched for Jeselson's testimony during summation. Because a prosecutor's summation is part of presenting the State's case, courts agree that a prosecutor's conduct during summation is protected by absolute immunity. *See Robinson v. Rome,* No. 11–CV–1411(NGG)(LB), 2011 WL 1541044, at *3 (E.D.N.Y.2011) (finding A.D.A.s immune from suit for claims related to, *inter alia,* an improper summation); *Johnson,* 1993 WL 36131, at *2 (granting absolute immunity to prosecutor where plaintiff alleged that A.D.A. "express[ed] to the jury her opinion as to the truth of the testimony of her witnesses during her summation").

**\*10**  In sum, to the extent that Moye's claims against Chao are based on his conduct at trial, those claims are covered by absolute immunity.

\* \* \* \*

The Court concludes that Chao has absolute immunity for all of Moye's claims, whether based on federal or state law, and whether founded on theories of malicious prosecution, abuse of process, denial of a fair trial, fabricated evidence, conspiracy, or intentional or negligent infliction of emotional distress.

### CONCLUSION

Chao's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2569085

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Matthews v. County of Cayuga, Not Reported in Fed. Supp. (2018)

2018 WL 2926272

Case 6:23-cv-01061-GTS-TWD   Document 8   Filed 10/16/23   Page 51 of 53

2018 WL 2926272
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Tyrone MATTHEWS, Plaintiff,

v.

COUNTY OF CAYUGA, et al., Defendants.

5:17-CV-1004 (MAD/TWD)
|
Signed 06/08/2018

**Attorneys and Law Firms**

OFFICE OF JARROD W. SMITH, OF COUNSEL: JARROD W. SMITH, ESQ., 11 South Main Street, P.O. Box 173, Jordan, New York 13080, Attorney for Plaintiff.

**ORDER**

Mae A. D'Agostino, U.S. District Judge

**\*1** On September 8, 2017, Plaintiff Tyrone Matthews commenced a counseled civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants County of Cayuga, Cayuga County Sheriff's Department, Cayuga County District Attorney's Office, Cayuga County District Attorney Jon E. Budelmann, Cayuga County Senior Assistant District Attorney Christopher Valdina, City of Auburn, and Auburn City Police Department. *See* Dkt. No. 1. In addition, Plaintiff filed an application to proceed *in forma pauperis. See* Dkt. No. 2.

On November 27, 2017, Magistrate Judge Thérèse Wiley Dancks issued an Order and Report-Recommendation in which she granted Plaintiff's motion to proceed *in forma pauperis. See* Dkt. No. 6. Magistrate Judge Dancks also conducted an initial review of the complaint and recommended dismissal of all claims. *See id.* This recommendation was rejected as moot because Plaintiff amended his original complaint as matter of right. *See* Dkt. No. 15.

In the Amended Complaint, filed on March 2, 2018, Plaintiff named as additional defendants the following law enforcement officers: Jeffrey Catalfano, Matthew Androsko, David Edmonds, Andrew Penczek, Andrew Skardinski, Timothy Spingler, and David Walters, and the Chief of the Auburn Police Department, Shawn I. Butler. *See* Dkt. No. 13 at ¶¶ 15-22.

In his Amended Complaint, Plaintiff asserts the following causes of action pursuant to 42 U.S.C. § 1983 and New York State law: "malicious prosecution; conspiracy to commit malicious prosecution; false arrest; intentional infliction of emotional distress; deliberately indifferent unconstitutional decisions, policies, practice[s], habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures[.]" Dkt. No. 13 at ¶ 27. These claims stem from two separate indictments.

In an indictment dated September 23, 2015, Plaintiff was charged with two counts of Criminal Sale of a Controlled Substance in the Third Degree, two counts of Criminal Possession of a Controlled Substance in the Third Degree, and two counts of Criminal Possession of a Controlled in the Seventh Degree. *See id.* at ¶ 28. On September 30, 2015, Plaintiff was arraigned on these charges and, unable to post bail, was housed at the Cayuga County Jail. *See id.* at ¶ 29. In an indictment dated July 7, 2016, Plaintiff was charged with one count of Criminal Possession of a Controlled Substance in the Third Degree. *See id.* at ¶ 30.

Plaintiff claims that Defendants lacked probable cause to arrest and prosecute him for the felony drug charges because they knew that "Plaintiff was a drug addict and nothing more than an agent of a drug dealer." *Id.* at ¶ 31. At trial, Plaintiff was convicted of three counts of Criminal Possession of a Controlled Substance in the Seventh Degree but was acquitted of the remaining, more serious counts.

On April 18, 2018, Magistrate Judge Dancks issued a second Order and Report-Recommendation based on Plaintiff's Amended Complaint in which she recommended the complaint be dismissed upon initial review under 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii). *See* Dkt. No. 16. Magistrate Judge Dancks further recommended that Plaintiff's § 1983 claims be dismissed without prejudice as barred by *Heck v. Humphrey,* 512 U.S. 477 (1994); and that Plaintiff's § 1983 claims against Defendants Budelmann and Valdina be dismissed with prejudice on prosecutorial immunity grounds. *See id.* In addition, Magistrate Judge Dancks recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and that Plaintiff's letter motion (Dkt. No. 14) be denied as moot. *See id.*

Case 6:23-cv-01061-GTS-TWD   Document 8   Filed 10/16/23   Page 52 of 53

Matthews v. County of Cayuga, Not Reported in Fed. Supp. (2018)

2018 WL 2926272

**\*2** A court may grant a motion to proceed *in forma pauperis* ("IFP") if the party is "unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). While "extreme caution should be used in considering an in forma pauperis application, ... there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333–34 (N.D.N.Y. 1994) (internal citations omitted); *see, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a party need only present a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned" recitation of the alleged misconduct. *Id.* (citations and quotation omitted). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

When a party files specific objections to a magistrate judge's order and report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However," [g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge are reviewed for clear error." *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A litigant's failure to file objections to a magistrate judge's report and recommendation waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted) ).

In the present matter, Magistrate Judge Dancks provided Plaintiff adequate notice that he was required to file any objections to the Order and Report-Recommendation, and specifically informed him that failure to object to any portion of the report would preclude his right to appellate review. *See* Dkt. No. 16 at 13. On May 15, 2018, Plaintiff's counsel filed a letter stating he "will not be filling any objections." *See* Dkt. No. 19.

**\*3** As Magistrate Judge Dancks correctly found, Plaintiff is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), to assert civil rights claims, pursuant to 42 U.S.C. § 1983, for false arrest, false imprisonment, conspiracy, and malicious prosecution. Under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the [plaintiff's] suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis omitted). In this case, Plaintiff was convicted of three counts of Criminal Possession of a Controlled Substance in the Seventh Degree. Plaintiff's success here would unquestionably cast doubt on these counts. Therefore, the Court finds that Plaintiff's claims for false arrest, false imprisonment, conspiracy, and malicious prosecution are barred under *Heck. See DiBlaisio v. City of New York*, 102 F.3d 654, 657-59 (2d Cir. 1996).

As Magistrate Judge Dancks correctly concluded, a prosecutor is absolutely immune from liability for virtually all acts associated with his or her function as a prosecutor and advocate. *See Lawlor v. Connelly*, 471 Fed. Appx. 64, 65 (2d Cir. 2012) (citing cases). In fact, the Second Circuit has specifically held that a prosecutor is absolutely immune from

**Matthews v. County of Cayuga, Not Reported in Fed. Supp. (2018)**

2018 WL 2926272

liability for withholding exculpatory evidence from a grand jury. *See Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). Therefore, the Court finds that Plaintiff's § 1983 claims against Budelmann and Valdina are dismissed with prejudice on prosecutorial immunity grounds.

Further, since Plaintiff's § 1983 claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state claims. *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (holding that the district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

Upon a review of the Order and Report-Recommendation, and considering that Plaintiff has not objected to any of Magistrate Judge Dancks' thorough and well-reasoned recommendations, the Court finds no clear error in Magistrate Judge Dancks' recommendations and hereby affirms and adopts the Order and Report-Recommendation as the opinion of the Court.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks' April 18, 2018 Order and Report-Recommendation is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 13) is **DISMISSED** on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii); and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2926272

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.